IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Roy A. Kepley, Jr.,                                    Case No. 3:05 CV 7474

                              Plaintiff,        MEMORANDUM OPINION
                                                AND ORDER

              -vs-

                                                JUDGE JACK ZOUHARY
Mark Lantz, et al.,

                        Defendants.

This matter is before the Court on Defendants' five Motions for Summary Judgment (Doc.

Nos. 31-35).  The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1331 and 28

U.S.C. § 1343.

BACKGROUND

On the evening of December 17, 2004, Plaintiff Roy Kepley heard a disturbance outside of

his Marion, Ohio home.  Plaintiff's ex-wife (Rebecca Kepley), two sons (James and Nathan Kepley),

and nephew (Matthew Reece) were present, as they had recently returned from the funeral of

Plaintiff's grandmother (Roy Kepley Depo. pp. 34-35).  After hearing loud voices and breaking glass,

Plaintiff called the police and apprised the dispatcher of the disturbance.  *Id*. at 45.  Plaintiff further

informed the dispatcher that he was a CCW (concealed carry) permit-holder, and he "was going to

step on [his] front porch, but [he] was not going to get involved."  *Id*.  While on the phone with the

dispatcher, Plaintiff retrieved a handgun from his bedroom and put it in his pocket, although he never

told the dispatcher that he had a weapon on his person.  *Id*. at 48, 54.

Defendant Officer Charles Lantz was the first officer to arrive on the scene (Lantz Depo. p.

37).  He parked his cruiser in the middle of the road, exited the vehicle, and two groups of bystanders

approached him. *Id*. at 34-35.  One of these bystanders told Lantz, "there's a man with a gun down there." *Id*. at 34.  Lantz immediately called dispatch and relayed that a gun may be involved. *Id*. at 37-38.

At this point, Defendant Officer L. A. Kelly joined Lantz, and the two officers approached Plaintiff's home with their guns drawn and held in the "low-ready" position. *Id*. at 39-40.  As Lantz and Kelly approached the front porch, they ordered all individuals on the porch (including Reece and at least one of Plaintiff's sons) to the ground, and all complied. *Id*. at 41-45.  While the individuals on the porch were ordered to the ground, Plaintiff appeared in the front door of his home.  Around this time, Defendant Officer Chad Campese joined Lantz and Kelly (Campese Depo. p. 20).

Plaintiff acknowledges he was ordered to the ground, but claims there was no room on the porch floor (Roy Kepley Depo. pp. 64-65).  Plaintiff contends he stepped over Reece and searched for a place to sit down, then did so on the front step of the porch. *Id*. at 66.  While sitting, Plaintiff reached into his coat pocket, removed his gun by the handle, and set it down next to him. *Id*. at 66-68.  He acknowledges he was not asked to take out his weapon, but contends he "wanted to disarm [himself] and lay it out there where it was visible to them so there was no discrepancy." *Id*. at 70.

After placing the gun on the porch, Plaintiff claims Lantz stated something to the effect of -- "you're just damned lucky I didn't put a bullet in you." *Id*. at 69.  Plaintiff claims multiple officers were yelling commands at him, including orders to "get down" and to discard the cigarette he was smoking. *Id*. at 71-72.  At this point, Plaintiff contends he picked up his weapon by the barrel and tried to hand it to an officer -- saying "here, you take it, I don't want no conflict with you guys" -- without hearing an order to do so. *Id*. at 71-73.  Although Reece claims he heard an officer yell "give me the gun" (Reece Depo. p. 31), Plaintiff specifically testified he was not told to hand over the gun

and nonetheless agreed that it was clear to him that the officers did not want him holding the gun. *Id.* at 72-73. After picking up the gun, Plaintiff froze and did not comply with orders to put the gun down. *Id.* at 77. Lantz eventually knocked the gun out of Plaintiff's hand, after which Plaintiff said "something to the effect of, that was not very smart" because he thought the gun could have discharged. *Id.* at 77-78.

After making this comment, Plaintiff claims the officers dragged him off the porch (causing Plaintiff's coat to be pulled over his head) and threw him onto the sidewalk. *Id.* at 81. Plaintiff also remembers "feeling what felt like somebody kicking [him] in the side of the head," although he could not say with certainty that someone actually kicked him. *Id.* at 81, 85-86. Plaintiff's son James recalled someone kicking his father in the head while he was down (James Kepley Depo. pp. 47-49), and his ex-wife recalled seeing one of the officers "rear back and kick him" (Rebecca Kepley Depo. pp. 49-50), although no one can identify which officer kicked Plaintiff. Plaintiff claims "the only resistance [he] can say that there was" was his attempt to get his coat off of his face so he could breathe (Roy Kepley Depo. p. 87).

Defendants' version of the facts is somewhat different. Defendants claim that when Plaintiff was ordered to the ground, he was belligerent, "irate" and pacing on the front porch (Lantz Depo. pp. 45-46). Lantz testified that Plaintiff "was pacing back and forth" and yelling that it was his property and he did not have to comply with the officers' commands. *Id.* at 46-47. When Plaintiff first pulled out his gun, Defendants contend Plaintiff did not immediately comply with orders to drop it. *Id.* Later, without instruction from the officers, Plaintiff started reaching for the gun and he was ordered not to touch it. *Id.* at 54. Defendants contend Plaintiff disobeyed this order, grabbed the weapon by the grip, and pointed it at Lantz's chest. *Id.* Lantz aimed his weapon at Plaintiff and began to pull

3

the trigger, but stopped when he realized that a bullet would likely travel through Plaintiff and injure Reece (who was laying on the porch behind Plaintiff) or Rebecca Kepley (who was standing in the doorway to the house).  *Id*. at 54-55.  Instead, Lantz side-stepped and knocked the gun out of Plaintiff's hand with his flashlight.  *Id*. at 56.

Once the gun was on the ground, Officer Mark Elliott grabbed Plaintiff's left side and attempted to push him away from the gun (Elliott Depo. p. 20).  Plaintiff stood up voluntarily, but resisted any further movement.  *Id*. at 25.  Lantz joined Elliott and they took Plaintiff to the ground after he refused to go down.  *Id*. at 27.  While Plaintiff was resisting, he never swung at or struck any of the officers.  *Id*. at 30-31.  Each officer specifically denies kicking Plaintiff while he was on the ground.

Once Plaintiff was in handcuffs, he was arrested and transported to the county jail, and released on bond approximately two hours later (Roy Kepley Depo. p. 103).  Later that evening, Plaintiff contacted the police department because his Commercial Driver's License (CDL) had been confiscated but not returned.  Elliott drove to Plaintiff's home to return the CDL, and while he was there, Elliott contends Plaintiff "made the comment that he could have killed several officers if he wanted to" (Elliott Depo. p. 40).  Plaintiff denies he made any such statement (Roy Kepley Depo. pp. 93-94).

Plaintiff was charged with the crime of felony obstructing official business, with a gun specification.  The case went to trial in Marion County, and Plaintiff was acquitted.  Plaintiff filed the instant action on December 16, 2005 against Defendants Lantz, Elliott, Campese, Kelly, Lieutenant Jason McDonald, the Marion Police Department, and the City of Marion, alleging the following claims: (1) violations of 42 U.S.C. § 1983, including excessive force and unlawful arrest; (2)

4

excessive force; (3) assault and battery; (4) municipal liability; (5) malicious prosecution; and (6) intentional infliction of emotional distress.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp.2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "[a]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter," *Wiley v. U.S.*, 20 F.3d 222, 226 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp.2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp.2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

### PLAINTIFF'S CONCESSIONS

Plaintiff concedes that he has not met his burden on any of his claims against the Marion Police Department or the City of Marion. Accordingly, summary judgment is granted as to all claims against these municipal entities.

Further, Plaintiff concedes that he failed to meet his burden as to all claims against Officer Kelly and his malicious prosecution claim against Lieutenant McDonald. Therefore, summary judgment is granted as to these claims as well.

6

**PLAINTIFF'S FEDERAL CONSTITUTIONAL CLAIMS**

Plaintiff claims Defendants violated several federal constitutional rights under the protections of the Fourth and Fourteenth Amendments, namely the right to be free from excessive force and unlawful arrest.  Defendants moved for summary judgment on each of these claims, and they will be addressed in the order raised.

### <u>Overview of Section 1983</u>

42 U.S.C. § 1983 provides a remedy for violations of the U.S. Constitution by state actors. The statute provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To establish a claim against a public official under Section 1983, Plaintiff must prove that the conduct complained of was: (1) committed by a person acting under the color of state law, which (2) deprived him of a federally protected constitutional or statutory right. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001); *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000).

There is no dispute that Defendants were acting under color of state law when engaging in the conduct that is the subject of this lawsuit.  Accordingly, the Court will address the issue of whether a federally protected constitutional or statutory right has been violated.

## **Qualified Immunity**

Qualified immunity is an affirmative defense that shields public officials performing discretionary functions from civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In *Saucier v. Katz*, 533 U.S. 194, 200 (2001), the Supreme Court made clear that "[i]n a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence."  The Sixth Circuit has adopted a three-step inquiry for determining an appropriate defense of qualified immunity:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known.  Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)) (emphasis added); *see also Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900-01 (6th Cir. 2004).  "If the answer to all three questions is 'yes,' qualified immunity is not proper."  *Champion*, 380 F.3d at 901.

While the issue of whether a defendant is entitled to qualified immunity is usually a purely legal question to be determined by the court, summary judgment is inappropriate where "the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury." *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994) (citing *Brandenburg v. Cureton*, 882 F.2d 211, 215-16 (6th Cir. 1989)).  In other words if, under Plaintiff's version of the disputed facts, Defendants are not entitled to qualified immunity, a genuine issue of material fact exists and the Court may not

8

grant summary judgment for Defendants.  The Court, therefore, bases its qualified immunity inquiry upon the facts taken in the light most favorable to Plaintiff, drawing all inferences in Plaintiff's favor. *Champion*, 380 F.3d at 900.

### Excessive Force

Plaintiff's primary claim is that the Defendant officers used excessive force when taking Plaintiff into custody.  Excessive force claims are analyzed under the Fourth Amendment's reasonableness standard; Plaintiff must show that the actions of Defendants were objectively unreasonable.  *Scott v. Clay County*, 205 F.3d 867, 876 (6th Cir. 2000), *cert. denied*, 121 S. Ct. 179 (2000) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

> "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment . . . .
>
> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Graham*, 490 U.S. at 396-97 (internal citation omitted).  The factors considered in assessing a constitutional excessive force claim include the particular facts and circumstances of each case, the severity of the crime, the threat posed by the suspect, and whether the suspect is "actively resisting arrest or attempting to evade arrest by flight."  *Id*. at 396.

"The 'reasonableness' of the particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham*, 490 U.S. at 396.  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly

evolving -- about the amount of force that is necessary in a particular situation." *Id*. at 396-97.  Thus, this reasonableness standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) (citation omitted).

Plaintiff does not challenge Lantz's act of knocking the gun out of Plaintiff's hand, nor does he challenge the force used to take Plaintiff to the ground.  Accepting Plaintiff's version of the facts as true, summary judgment is appropriate on these claims.  This is because in light of the circumstances admitted by Plaintiff -- he did not immediately comply with Lantz's orders to get to the ground, he pulled a gun from his pocket without being asked, picked up the gun again without being asked, and did not comply with orders to drop the gun -- it was objectively reasonable for Lantz to knock the gun out of Plaintiff's hand and for the officers to take Plaintiff to the ground.

Plaintiff's primary contention is that the officers used excessive force by kicking him while he was on the ground.  Defendants specifically "concede that kicking Mr. Kepley after he was on the ground would constitute excessive force under the circumstances" (Reply, Doc. No. 46, pp. 1-2).  Defendants contend, however, that they are nonetheless entitled to summary judgment on this claim because neither Plaintiff nor any of his witnesses can identify the specific officer or officers that kicked him.

"It is well established that a plaintiff cannot recover in a § 1983 action if he does not identify the officer that caused the alleged deprivation of his constitutional rights."  *Kilgore v. City of Cincinnati*, No. 1:05-CV-00256, 2006 WL 1580224, at *3 (S.D. Ohio June 5, 2006) (citing *Thornton v. Spooner*, 872 F.3d 1029, 1989 U.S. App. LEXIS 3420 (6th Cir. 1989); *District Council 47, Am.*

*Fed'n of State, County and Mun. Employees v. Bradley*, 795 F.2d 310, 315 (3d Cir. 1986); *Hill v. Algor*, 85 F.Supp.2d 391, 405 (D.N.J. 2000)).

Plaintiff, however, claims he has offered evidence sufficient to take this case to a jury. Plaintiff cites two District of Kansas cases for the proposition that "defendants cannot escape liability merely because plaintiff is unable, at this stage of the proceedings, to positively identify which deputies beat him." *Davis v. Hill*, 173 F. Supp. 2d 1136, 1144 (D. Kan. 2001); *Smith v. Delamaid*, 842 F. Supp. 453, 459 (D. Kan. 1994) ("the individual defendants cannot escape liability merely because plaintiff cannot identify which officers allegedly abused him at which time").  Both of these cases are distinguishable, however, because the defendants there failed to intervene while the plaintiffs were being abused.

It is well-settled that "a police officer has a duty to act when he sees another officer using excessive force against an arrestee or pretrial detainee if the officer could realistically prevent that force and had sufficient time to do so." *Davis v. Rennie*, 264 F.3d 86, 114 (1st Cir. 2001) (citing *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982) (per curiam)).  In both *Davis* and *Smith*, plaintiffs provided evidence that the individual defendant officers were present during an extended application of excessive force, yet failed to intervene.  Indeed, in the vast majority of cases which have allowed a plaintiff's excessive force claim to go to a jury when the specific attacker cannot be identified, summary judgment was denied because the officers were, at a minimum, liable under Section 1983 for failure to prevent or intervene.  *See Davis*; *Smith*; *Universal Calvary Church v. City of New York*, No. 96 Civ. 4606, 2000 U.S. Dist. LEXIS 15153, at *63-*64 (S.D.N.Y. Oct. 13, 2000) ("Plaintiff is correct that, in certain situations, the burden must shift to each defendant to disprove his or her involvement. . . . [But the initial] burden of proving that each defendant acted tortiously,

11

however, remains on the plaintiff."); *Paul v. City of Rochester*, 452 F. Supp. 2d 223, 228 (W.D.N.Y. 2006) (citing *Universal Calvary Church*).

In the instant action, however, an extended beating did not occur.  Rather, Plaintiff claims he "felt" he was kicked once or twice shortly after he was taken to the ground.  Plaintiff offers no evidence which suggests that any Defendant had an opportunity to intervene or prevent him from being kicked, nor was such a claim alleged in the Amended Complaint.  Accordingly, Plaintiff cannot avoid summary judgment on a theory of failure to intervene or prevent the use of excessive force.

Plaintiff also relies on the case of *Rutherford v. City of Berkeley*, 780 F.2d 1444 (9th Cir. 1986), *abrogated on other grounds by Graham*, 490 U.S. at 397.  In *Rutherford*, the plaintiff alleged that five or six police officers threw him to the ground and beat him without provocation.  The plaintiff identified several officers that assaulted him, but could not recall whether they actually kicked or punched him.  *Id.* at 1445. The district court entered a directed verdict in favor of these defendants, holding that the plaintiff "offered no proof that any of the particular individuals he named as defendants did do any beating of him." *Id.* at 1445-46.  The Ninth Circuit reversed, holding that "a jury could reasonably infer that the named officers were participants in punching or kicking Rutherford." *Id.* at 1448.  The court relied on the fact that the plaintiff saw each of the defendants' faces while being beaten, as well as the defendants' testimony that they were among the officers that detained, arrested, and handcuffed the plaintiff.

*Rutherford* stands for the proposition that a plaintiff can survive summary judgment (or directed verdict) when there is sufficient evidence from which a jury can reasonably infer that the individual defendant(s) used excessive force, even when the plaintiff cannot specifically identify his attacker. *Id.* at 1448.  This case has only been followed once in the Sixth Circuit, in *Senk v. Village*

*of Northfield*, 961 F.2d 1578, 1992 U.S. App. LEXIS 8473 (6th Cir. 1992).  In *Senk*, the plaintiff was wrestled to the ground by five or six officers, and there were five officers on top of him when a sixth officer choked him with a nightstick.  Two officers moved for summary judgment claiming the plaintiff presented no specifics as to their conduct.  The court relied on *Rutherford* and held that the plaintiff could survive summary judgment because there was evidence that only five officers were present at the time of the incident, yet five officers wrestled the plaintiff to the ground and the defendants were among those five officers.  *Id*. at *9-*10 (citing *Rutherford*, 780 F.2d at 1448).  The jury could reasonably infer that the two officers held plaintiff down while he was beaten because they were among the five officers at the scene.

In the instant action, however, the Record only contains evidence that one officer used excessive force, while the others did not use (or fail to prevent) such force.  Neither Plaintiff nor any of the witnesses on his behalf can identify which officer kicked Plaintiff.  Plaintiff himself cannot even state definitively that he was kicked (Roy Kepley Depo. pp. 85-86).  Further, Plaintiff does not allege that any Defendant failed to prevent the use of excessive force.  Thus, unlike *Senk*, Plaintiff has not offered enough evidence to permit a jury to reasonably infer that any individual officer kicked Plaintiff, and to allow a jury to do so would be mere speculation.  "It is not the intent of Rule 56 [summary judgment] to preserve purely speculative issues of fact for trial." *Thornton v. Spooner*, 872 F.3d 1029, 1989 U.S. App. LEXIS 3420, at *5 (6th Cir. 1989) (citing *Exxon Corp. v. Fed. Trade Comm'n*, 663 F.2d 120, 128 (D.C. Cir. 1980) (affirming summary judgment on a plaintiff's excessive force claim)).  Accordingly, summary judgment is granted as to all Defendants on Plaintiff's excessive force claim.

13

**Unlawful Arrest**

Plaintiff next claims Defendants caused him "to be arrested and detained without probable cause in violation of his right to be free from unreasonable searches and seizures governed by the Fourth Amendment to the United States Constitution" (Am. Compl., Doc. No. 16, ¶ 25).  In what was described as "an oversight on the part of defense counsel," Defendants did not move for summary judgment on this claim (Reply, Doc. No. 46, pp. 3-4). "[D]istrict courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).  Here, the parties were notified at a July 2, 2007 telephone conference that the Court was considering ruling *sua sponte* on Plaintiff's claim for wrongful arrest, and both sides agreed the Record was complete and that further briefing was unnecessary (Doc. No. 47).  Accordingly, the issue is properly before the Court.

It is well established that any arrest without probable cause violates the Fourth Amendment. *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003):

> For a police officer to have probable cause for arrest, there must be "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense."

*Id*. (citations omitted).  Probable cause only requires the "probability of criminal activity."  *Id*. Whether there is probable cause is for a jury to decide, "unless there is only one reasonable determination that is possible." *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003).

Plaintiff was arrested for the crime of obstructing official business, in violation of Ohio Rev. Code § 2921.31(A):

14

> No person, without privilege to do so and with purpose to prevent, obstruct, or delay
> the performance by a public official of any authorized act within the public official's
> official capacity, shall do any act that hampers or impedes a public official in the
> performance of the public official's lawful duties.

"A conviction under the Ohio [statute] requires (1) the performance of an unprivileged act (2) with the purpose of preventing, obstructing or delaying the performance by a public official of an authorized act within his official capacity (3) which hampers or impedes the public official in the performance of his lawful duties." *Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005) (citing *City of North Ridgeville v. Reichbaum*, 112 Ohio App. 3d 79, 84 (Ohio Ct. App. 1996)).

Accepting Plaintiff's version of the facts as true, as required at this stage, probable cause existed to arrest and charge Plaintiff with obstructing official business.  Plaintiff's testimony reveals that when Defendants approached his home, they ordered him to the ground (Roy Kepley Depo. pp. 64-65).  Plaintiff fully acknowledged he never complied with this order.  Instead, he moved toward Defendants, climbing over individuals who were already on the ground.  *Id*.  Then he sat on the top step of the porch, pulled a weapon out of his pocket, and set it next to him (and still within his reach).  *Id*. at 66-68.  Plaintiff acknowledged he was never asked to take out his weapon.  *Id*. at 70.

While sitting on the step, Plaintiff heard officers still ordering him to "get down." *Id*. at 71-72. Instead of getting on the ground, Plaintiff reached for the weapon, picked it up (by the barrel), and pointed the handle at Lantz without hearing an order to do so.  *Id*. at 71-73.  Then, with officers ordering him to drop the gun, Plaintiff admits he "froze" and did not comply with the order.  *Id*. at 77. Lantz had to knock the gun out of Plaintiff's hand, and Defendants had to forcibly take Plaintiff to the ground.  These events reveal the only order Plaintiff complied with was an order to discard the cigarette he was smoking.  *Id*. at 71-72.

15

Based on Plaintiff's version of the events of December 17, 2004, probable cause existed to charge him with obstructing official business under Ohio Rev. Code § 2921.31(A).  Accordingly, summary judgment is appropriate on Plaintiff's wrongful arrest claim.

### PLAINTIFF'S STATE-LAW CLAIMS

Plaintiff brings the following state-law claims against Defendants: (1) malicious prosecution; (2) assault and battery; and (3) intentional infliction of emotional distress.

### Political Subdivision Employee Immunity

Defendants, as employees of a political subdivision, enjoy immunity from certain claims pursuant to Ohio Rev. Code §2744.03(A)(6).  That section provides immunity to a city employee from "a civil action brought . . . to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function," unless the employee acted outside the scope of his employment, acted "with malicious purpose, in bad faith, or in a wanton or reckless manner," or unless "liability is expressly imposed upon the employee by a section of the Revised Code."  Ohio Rev. Code § 2744.03(A)(6)(a)-(c).

"Malicious purpose encompasses exercising 'malice,' which can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified."  *Caruso v. State*, 136 Ohio App.3d 616, 620 (Ohio Ct. App. 2000) (citing *Jackson v. Butler Cty. Bd. of Cty. Comm'rs.*, 76 Ohio App.3d 448, 453-454 (Ohio Ct. App. 1991)).  An act is committed recklessly if it is done "with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that such risk is greater than that necessary to make the conduct negligent."  *Caruso*, 136

16

Ohio App. 3d at 621 (*Hackathorn v. Preisse*, 104 Ohio App.3d 768, 771 (Ohio Ct. App. 1995)).  The Court will address the applicability of immunity to each claim separately.

**Malicious Prosecution**

"The elements of the tort of malicious criminal prosecution are (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 146 (1990).  Malice may be inferred from a lack of probable cause. *Melanowski v. Judy*, 102 Ohio St. 153, 155 (1921).  "Probable cause is the real gist of the action." *Id.*  Probable cause is defined as "[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." *Id.* at 156; *see also Burkholder v. Emahiser*, No. OT-01-020, 2002 Ohio App. LEXIS 1317, at *9 (Ohio Ct. App. Mar. 22, 2002).

"It is important to recognize that probable cause may exist despite the fact that no crime actually occurred." *Doty v. Marquis*, No. 99 JE 9, 2000 Ohio App. LEXIS 4417, at *6 (Ohio Ct. App. Sept. 22, 2000).  One need not even have enough evidence to ensure a conviction. *Deoma v. Shaker Heights*, 68 Ohio App.3d 72, 77 (Ohio Ct. App. 1990) (citing *Epling v. Pacific Intermountain Express Co.*, 55 Ohio App.2d 59, 62 (Ohio Ct. App. 1977)).  The return of an indictment by a grand jury raises a rebuttable presumption that probable cause exists.  "In order to rebut this presumption, plaintiff was required to produce 'substantial' evidence that the return of the indictment resulted from perjured testimony or that the grand jury proceedings were otherwise 'significantly' irregular." *Reinoehl v. Trinity Universal. Ins. Co.*, 130 Ohio App.3d 186, 196 (Ohio Ct. App. 1998) (citations omitted).

17

Moreover, "a proceeding is 'terminated in favor of the accused' only when its final disposition indicates that the accused is innocent." *Ash v. Ash*, 72 Ohio St.3d 520, 522 (1995).

The Sixth Circuit has noted that "[u]nder Ohio law, police officers will not be held liable for the instigation of criminal proceedings, where they provide the prosecutor with 'a full and fair disclosure of all the material facts as revealed by [their] investigation, including [the accused's] exculpatory statements.'" *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 316-17 (6th Cir. 2005) (quoting *Robbins v. Fry*, 72 Ohio App.3d 360, 362 (Ohio Ct. App. 1991)); see also *Lentz v. City of Cleveland*, 410 F. Supp.2d 673, 698 (N.D. Ohio 2006).  "Once they have done that, in spite of their investigative activities, the officers' status in the prosecution is 'no more than that of witness or informant.'"  *Id.*

Plaintiff's malicious prosecution claim can be summarized as follows: the post-incident narratives of Officers Lantz, Elliott and Campese contain false statements, and the prosecutor (Anthony Rich) relied on these statements when deciding to charge Plaintiff with obstruction of official business.  The alleged false statements are the primary disputed facts here:  namely, whether Plaintiff pointed the barrel of his gun at Lantz; whether Plaintiff told Elliott he "could have killed several officers if he wanted to;" and whether Plaintiff complied with the officers' demands.

As a threshold matter, Defendants are not entitled to immunity at this stage because a genuine issue of material fact exists as to whether they acted "with malicious purpose, in bad faith, or in a wanton or reckless manner."  Ohio Rev. Code § 2744.03(A)(6)(b).  Bad faith involves "a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another."  *Radvansky*, 395 F.3d at 316 n.16.  As noted above, factual disputes exist as to some of the circumstances surrounding

18

Plaintiff's arrest.  If Defendants knowingly included false statements in their narratives, as Plaintiff suggests, a jury could certainly determine they acted in bad faith.

Regardless of the immunity inquiry, Plaintiff's malicious prosecution claim fails on its merits. While Plaintiff can survive summary judgment on two of the three prongs (malice and favorable disposition), Plaintiff has not demonstrated a lack of probable cause.  Indeed, as noted above in the Court's analysis of Plaintiff's unlawful arrest claim, probable cause existed to arrest and charge Plaintiff for obstructing official business, in violation of Ohio Rev. Code § 2921.31(A).  This is true even when construing the facts and resolving all inferences in Plaintiff's favor.   Accordingly, Plaintiff's claim for malicious prosecution fails on its merits, and summary judgment is appropriate.

**Assault and Battery**

As Plaintiff aptly recognizes, "Mr. Kepley's claims for assault and battery rise or fall with his excessive force claim" (P.'s Mem. Opp., Doc. No. 45, p. 20).  Just as Plaintiff's evidence is insufficient for a jury to reasonably determine which officer kicked him, it is insufficient to prove that any individual Defendant acted maliciously or in bad faith as required to overcome immunity. Accordingly, Defendants enjoy immunity from Plaintiff's assault and battery claims, and summary judgment is granted as to all Defendants.

**Intentional Infliction of Emotional Distress**

To establish a claim of intentional infliction of emotional distress in Ohio, a plaintiff must prove that:

1.      the actor intended to cause emotional distress or knew or should have known
         that his actions would result in serious emotional distress to the plaintiff;

2.      the conduct complained of has been so outrageous in character and extreme in
         degree as to go beyond all bounds of decency;

19

3.      the conduct proximately caused the plaintiff's injury; and

4.      the mental anguish suffered by the plaintiff is serious and of a nature that no
reasonable person could be expected to endure it.

*Ashcroft v. Mt. Sinai Medical Ctr.*, 68 Ohio App.3d 359, 366 (Ohio Ct. App. 1990).  *See also Yeager v. Local Union 20 of Teamsters*, 6 Ohio St.3d 369 (1983).    To be "extreme" and "outrageous," conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager*, 6 Ohio St.3d at 375; *see also Hillman v. Safeco Ins. Co. of Am.*, 190 F. Supp.2d 1029, 1039 (N.D. Ohio 2002).

The "extreme and outrageous" conduct identified by Plaintiff is the alleged assault and battery and subsequent malicious prosecution.  As discussed above, Defendants enjoy immunity from state-law claims arising from the alleged assault and battery because Plaintiff fails to offer evidence showing that any individual Defendant acted maliciously or in bad faith.  Accordingly, the only allegation the Court can consider is the malicious prosecution allegation based on the allegedly false statements contained in the post-incident narratives of Officers Lantz, Elliott and Campese.

The Ohio Supreme Court has described conduct that is "extreme and outrageous" (*Yeager*, 6 Ohio St.3d at 374-75):

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

20

The alleged false statements made by Defendants Lantz, Elliott, and Campese, taken as true, do not rise to the level of "extreme and outrageous" contemplated by the Ohio Supreme Court.

"A plaintiff claiming severe and debilitating emotional distress must present some 'guarantee of genuineness' in support of his or her claim to prevent summary judgment." *Powell v. Grant Med. Ctr.*, 148 Ohio App.3d 1, 6 (Ohio Ct. App. 2002) (citations omitted). Such proof may be made through expert testimony or lay witnesses acquainted with the plaintiff's emotional makeup and changes thereto. *Id.* Additionally, "[a] plaintiff claiming mental distress further must establish a 'substantial causal relationship' between the cause alleged, as distinguished from other possible causes, and the claimed emotional injury suffered by the plaintiff." *Id.* at 7 (quoting *Grote v. J.S. Mayer & Co.*, 59 Ohio App.3d 44, 47 (Ohio Ct. App. 1990)).  In the instant action, the only evidence of emotional distress offered by Plaintiff is his own testimony that he saw a psychiatrist because "[a]ll that happening to me, it really just screwed me up and made me feel very, very scared" (Roy Kepley Depo. p. 115).  This is insufficient to establish a causal link between Plaintiff's alleged harm and the alleged false statements made by Defendants Lantz, Elliott and Campese, as distinguished from other causes (including the alleged excessive force).  Accordingly, Plaintiff's intentional infliction of emotional distress claim fails, and summary judgment is granted as to all Defendants on this claim.

## CONCLUSION

For the reasons stated above, Defendants' Motions for Summary Judgment (Doc. Nos. 31-35) are granted.

IT IS SO ORDERED.

        *s/ Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

July 18, 2007

21